## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**FLOYD ANTHONY FEY,**

**Plaintiff,**

**v.**                                      1:16-cv-2851-WSD

**PANACEA MANAGEMENT
GROUP LLC, and LEE
SCHULMAN,**

**Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Panacea Management

Group LLC ("Panacea") and Lee Schulman's ("Schulman") (together,

"Defendants") Motion for Summary Judgment [32], Plaintiff Floyd Anthony Fey's

("Plaintiff") Motion for Leave to file Plaintiff's Local Rule 56.1(B)(2) Response to

Statement of Undisputed Material Facts and Plaintiff's Local Rule 56.1(B)(2)(b)

Statement of Additional Material Facts [42] ("Motion for Leave"), and

Defendants' Daubert Motion to Exclude Proposed Expert Testimony of Anna

Fey [31] ("Daubert Motion").

## I.    BACKGROUND

### A.    Facts

Plaintiff is a professional artist in Atlanta, Georgia.  (Defendants' Statement of Undisputed Material Facts [32.2] ("DSMF") ¶¶ 1-2).  In 1994, Tommy Turrentine ("Turrentine") commissioned Plaintiff to create a drawing of the Old Vinings Inn restaurant (the "Restaurant") for $125.  (DSMF ¶¶ 12, 20).  Turrentine owned the Restaurant at the time.  (DSMF ¶ 12).  Plaintiff completed the drawing and told Turrentine that "the picture of the restaurant could only be hung as wall art."  ([27] at 37; DSMF ¶ 18).  The drawing depicted the exterior of the Restaurant, was eleven by fourteen inches, and was done using graphite pencil on paper.  ([32.8] at 1).  Plaintiff's name appeared in the bottom-left corner of the drawing.  ([1.1]).  Turrentine displayed the drawing on the Restaurant's wall.

Later in 1994, Turrentine asked Plaintiff to update the drawing to reflect architectural changes to the Restaurant.  (DSMF ¶ 22).  Plaintiff used an overlay to make the requested modification to the drawing.  (DSMF ¶ 23).  This increased the drawing's dimensions to eleven by eighteen inches.  ([32.8] at 1).  Plaintiff gave Turrentine a photostatic print of the modified drawing (the "Drawing") but kept the original in his possession.  (DSMF ¶¶ 26-27).  Plaintiff did not charge Turrentine for the modification because he was happy with the publicity he received from

having the drawing on display in the Restaurant.  (DSMF ¶ 24).  Plaintiff's name remained in the bottom-left corner of the Drawing.  ([1.2]).  Plaintiff is unwilling to sell the Drawing—or prints of the Drawing—to third parties because it is a commissioned work.  (DSMF ¶¶ 15-17).

In April 2013, Panacea leased the Restaurant building and purchased the Restaurant's remaining assets, including its intellectual property.  (DSMF ¶¶ 8, 10; [28] at 18-19).[1]  Although the photostatic print of the Drawing no longer hung in the Restaurant at the time of the purchase, Schulman, the sole member of Panacea, found a copy of the Drawing in a Restaurant advertisement in a local newspaper dated February 1996.  (DSMF ¶¶ 9, 38, 43; [28] at 55).  Plaintiff's name was not visible or legible on this version of the Drawing.  (DSMF ¶ 46).  Schulman located the advertisement in a scrapbook in a museum across the street from the Restaurant.  (DSMF ¶ 38).  He made a copy of the Drawing, with the permission of the museum curator, and began using the Drawing to promote the Restaurant. (DSMF ¶ 39).  Schulman did not know who created the Drawing, and believed that

---

[1]      Panacea leased the Restaurant building from Amin Rahme until 2015, when Panacea Land Management, LLC purchased the building from Mr. Rahme. Panacea currently leases the building from Panacea Land Management, LLC, of which Schulman is a member.  (DSMF ¶ 11).

Panacea was authorized to use it because Panacea had acquired the Restaurant's intellectual property. (DSMF ¶¶ 40-41).

On September 11, 2013, Plaintiff visited the Restaurant for the first time since 1994, and met with Schulman. (DSMF ¶¶ 27, 29-30). Plaintiff noticed that a copy of the Drawing, taken from the newspaper advertisement, was displayed on the Restaurant's gift cards and menus. (DSMF ¶¶ 31, 36). Plaintiff told Schulman that he created the Drawing. (DSMF ¶ 32). Schulman told Plaintiff he could "show his work at the restaurant . . . at no charge," and gave Plaintiff a business card that had a version of the Drawing on it. ([28] at 76; DSMF ¶¶ 33, 37). Plaintiff did not ask Schulman to stop displaying the Drawing. ([27] at 74).

After the meeting, Plaintiff sent Schulman a letter expressing "concern that [his] name was nowhere associated with the [Drawing] at all." ([27] at 58; DSMF ¶ 44). Plaintiff asked Schulman to "ensure that his name was always associated with the [Drawing] in the future." ([27] at 75; DSMF ¶ 44). Plaintiff did not receive a response. ([32.8] at 2). Shortly after sending the letter, Plaintiff saw a copy of the Drawing on the Restaurant's website. (DSMF ¶ 48).

About a year later, on October 31, 2014, Plaintiff's counsel sent Schulman a letter, noting that the Drawing appeared on the Restaurant's website and social media accounts, and on third party websites such as urbanspoon.com. ([32.8] at 2).

The letter stated that Plaintiff's name did not appear on these versions of the Drawing, and demanded payment of a $23,000 license fee or a $30,000 purchase price for the Drawing. ([32.8] at 2-3; DSMF ¶ 49).

On November 17, 2014, Defendants' counsel responded to Plaintiff's letter and agreed to investigate the alleged copyright infringements. (DSMF ¶ 52). The same day, Plaintiff registered his Drawing with the United States Copyright Office. (DSMF ¶ 60). In December 2014, Panacea offered to purchase an unlimited license to the Drawing. (DSMF ¶ 61). Plaintiff declined the offer, and Defendants immediately began to remove the Drawing from the Restaurant's website and social media accounts, third party websites featuring the Restaurant, and the Restaurant's marketing materials, including gift cards, business cards, and menus. (DSMF ¶ 61). Defendants replaced the Drawing with a monochromatic version ("Monochromatic Photograph") of a color photograph ("Color Photograph") of the Restaurant. (DSMF ¶ 53; [28.1] at 84-85; [37] at 5). Panacea acquired the Color Photograph when it purchased the Restaurant's assets and intellectual property.

(DSMF ¶ 54).[2]  Panacea made the Monochromatic Photograph appear green and

white to reflect the colors of the Restaurant.  (DSMF ¶ 59).

On March 31, 2016, more than a year later, Plaintiff's counsel sent a second

letter to Defendants, alleging that the Monochromatic Photograph infringed

Plaintiff's copyright interest in the Drawing.  (DSMF ¶ 62).  On April 8, 2016,

Defendants' counsel responded to Plaintiff's letter, denying the alleged copyright

infringement on the grounds that the Monochromatic Photograph and the Drawing

are materially different.  ([32.13] at 1-2).  Defendants' counsel also confirmed that

Panacea had ceased "reproducing, distributing or displaying the [Drawing] in any

medium that it controls" and that it had "no interest" in using the Drawing in the

future.  ([32.13] at 2).

B.    Procedural History

On August 6, 2016, Plaintiff filed his Complaint [1], asserting six claims for

relief.  Counts 1 and 2 assert claims for copyright infringement on the grounds that

Defendants used the Drawing and the Monochromatic Photograph, allegedly a

derivative of the Drawing, without Plaintiff's permission.  Count 3 alleges that

that, in violation of 17 U.S.C. § 1202, Defendants intentionally "removed, covered

---

[2]    The Color Photograph was on the Restaurant's website when Panacea
purchased the Restaurant's assets.  ([28] at 67).  It is unclear who took the
photograph.  ([28.1] at 85).

or replaced the inscription 'Tony Fey'" on the Drawing. (Compl. ¶ 68). Count 4 seeks attorney's fees, under 17 U.S.C. § 505, on the grounds that "Defendants' conduct in this dispute has been objectively unreasonable and unduly litigious." (Compl. ¶ 76). Count 5 asserts a state law claim for unjust enrichment on the grounds that "equity and good conscience demand that Plaintiff be compensated for the benefits received by Defendants with regard to Plaintiff's work." (Compl. ¶ 81). Count 6 seeks a permanent injunction, under 17 U.S.C. § 502 and O.C.G.A. § 10-1-370 *et seq.*, enjoining Defendants "from making future infringing uses of the Plaintiff's protected work." (Compl. at 23; Compl. ¶¶ 83-86).

On February 2, 2017, Defendants filed their Daubert Motion, seeking to exclude the testimony of Anna Fey ("Fey"), Plaintiff's wife and proposed damages expert, on the grounds that her methodology is not reliable. Also on February 2, 2017, Defendants filed their Motion for Summary Judgment, seeking summary judgment on Plaintiff's claims. On February 27, 2017, Plaintiff filed his response brief but, in violation of the Local Rules, did not file his response to Defendants' Statement of Undisputed Material Facts [32.2]. On March 28, 2017, two weeks after Defendants filed their reply brief, Plaintiff sought leave to untimely file his response to Defendants' Statement of Undisputed Material Facts

and his statement of additional material facts.  Defendants oppose Plaintiff's

request.

## II.    DEFENDANTS' DAUBERT MOTION

### A.    Legal Standard

The admission of expert evidence is governed by Federal Rule of

Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine a
> fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;
> and
>
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.  This provision requires district courts to "act as gatekeepers,

excluding evidence unless is it reliable and relevant."  Hughes v. Kia Motors

Corp., 766 F.3d 1317, 1328 (11th Cir. 2014).  "District courts are charged with this

gatekeeping function to ensure that speculative, unreliable expert testimony does

not reach the jury under the mantle of reliability that accompanies the appellation

'expert testimony.'" Id. at 1328-29. "The decision to exclude expert testimony is committed to the sound discretion of the District Court." Id. at 1331.

The Eleventh Circuit "has set out three requirements that an expert must meet before his opinions may be admitted. First, the expert must be qualified on the matter about which he intends to testify. Second, he must employ reliable methodology. Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue." Id. at 1329 (internal citations omitted). "The proponent of the expert opinion must carry the burden of establishing qualification, reliability, and helpfulness." Id.

"Whether an expert's testimony is reliable depends on the particular facts and circumstances of the particular case," including "(1) whether the methodology can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential rate of error of the methodology employed, and (4) whether the methodology is generally accepted." Id. These factors are only general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

B.    Analysis

Plaintiff has identified Fey, his wife, as an expert witness on the issue of damages in this action.  Fey produced her expert report on November 24, 2016. Defendants move to exclude Fey's testimony as unreliable.[3]

Fey has twenty-four years of experience in licensing images.  ([31.1] at 1). Her expert report concludes that "the fair market value of [Defendants'] uses" of Plaintiff's Drawing is "$33,000 to $36,000" per year.  ([31.1] at 1).  To reach this conclusion, Fey calculated a "base price range of $11,000 to $12,000," and then tripled this amount to reflect the Restaurant's allegedly "exclusive" use of the Drawing as a "brand."  ([31.1] at 2, 4).

To calculate the "base price," Fey first consulted online "price calculators" offered by stock licensing agencies Masterfile, FotoQuote, and Getty Images.  The

---

[3]    On March 13, 2017, Plaintiff filed a supplemented version of Fey's expert report.  ([40]).  The Court declines to consider this supplement because it was filed (1) more than three months after Fey was deposed, (2) more than two months after the deadline for "completion of all discovery, fact and expert," ([10] at 1), (3) more than a week after briefing concluded on Defendants' motion to exclude Fey's expert testimony, and (4) on the same day that Defendants' reply brief was due on their Motion for Summary Judgment.  The opinions expressed in the supplemented report also were not included in a separate statement of material facts, as required by Local Rule 56.1, and thus are not required to be considered for summary judgment purposes.  Even if the Court considered the supplemented report, it would not alter the Court's conclusion, explained below, that Fey's methodology is unreliable.

calculators provided licensing prices based on information, entered by Fey, about the Restaurant's use of the Drawing. For example, Getty Images calculated a total licensing price of $12,650 for the Restaurant's alleged use of the Drawing on its website, 5,000 business cards, 1,000 gift cards, 25,000 menus, 1 email list, 5,000 mail items, 3 social media sites, 6 external websites, and in public relations and direct advertising. ([31.1] at 6).[4] Fey entered these alleged uses into the calculators based on her perception of "reasonable quantities that might be expected in a business the type and size of the [Restaurant]." ([31.1] at 4).

After obtaining a "sampling" of calculator prices, Fey considered the calculator prices in light of her "historical knowledge" of the industry and her understanding of "how long the [Drawing] was used" by the Restaurant, "the specific usages that were made," "the impact of the image on the viewer" and on the Restaurant's business, "the purpose of the use of the [Drawing] by the restaurant," "the type and size of [the] business" operated by Defendants, "the scarcity of the image, the uniqueness of the image, how difficult the image in question would be to find elsewhere, [and] how difficult the image was to create." ([31.1] at 2-4, [29] at 53-54). Fey combined her consideration of these factors with

---

[4]     FotoQuote and Masterfile returned prices of $10,480 and $15,800, respectively. ([31.1] at 5).

the calculator prices to arrive at a base price of $11,000 to $12,000 per year for Defendants' use of the Drawing. ([31.1] at 4; [29] at 25-27, 53-55). Fey then tripled the base price to reflect "exclusivity and brand premiums" because, in her view, the Drawing "is inextricably and permanently associated with the restaurant in such a manner that [it] is no longer useful for relicense." ([31.1] at 2).

The Court finds that Fey's methodology is not reliable. Fey does not know how the price calculators work or what data they rely on, and she has not shown the calculators are reasonably relied on by experts in establishing licensing fees. ([29] at 69-71). Fey also provides only abstract definitions of several factors that she considered in conjunction with the calculator prices. For example, although she states that she considered the difficulty of creating the Drawing, she does not identify the difficulty level she assigned to the Drawing or explain how she reached that determination. She states that she considered the size of the Restaurant's business, but conceded at her deposition that she does not know the Restaurant's revenue and that she evaluated the Restaurant's size based on "pictures of the restaurant" and her general sense of "the visibility of the restaurant." ([31.1] at 72-74). Although Fey states that she estimated the Restaurant's revenue, she has not provided the Court with her estimate and she no longer remembers what the estimate was. ([29] at 73-74).

Even if Fey had adequately defined the factors she considered, she fails to meaningfully explain how those factors—and her "historical knowledge"—interacted with the calculator prices to produce a base price of $11,000 to $12,000 per year.  She testified that, after she obtains a calculator price, she "internally . . . matches it up to what [she] think[s] independently," "put[s] all of that information together," and arrives at an appropriate licensing fee.  ([29] at 26, 53-54; [31.1] at 3-4).  This testimony is too vague to establish the reliability of Fey's methodology.  See Hughes, 766 F.3d at 1329 (excluding expert testimony because "the expert never explained how his experience or the relevant texts supported his opinion," including because "[h]e did not explain how [the factors he relied on] were relevant, nor did he explain how he used those factors to reach his conclusion"); United States v. Frazier, 387 F.3d 1244, 1265 (11th Cir. 2004) (en banc) ("Since [the expert] was relying solely or primarily on his experience, it remained the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case.").  Defendants' Daubert Motion is granted, and Fey's expert testimony is excluded as unreliable.[5]

---

[5]     The Court is troubled by Fey's deposition testimony that she would receive

## III. PLAINTIFF'S MOTION FOR LEAVE

On February 2, 2017, Defendants filed their Motion for Summary Judgment and their Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment [32.2].  Plaintiff did not file his response by February 23, 2017, in violation of the Local Rules.  On February 24, 2017, Plaintiff sought leave to file his untimely response, claiming that "unforeseen computer issues" prevented him from timely filing his materials.  ([34] at 2).  The Court granted Plaintiff's request, and his response brief was filed on February 27, 2017.  Plaintiff did not file a response to Defendants' statement of undisputed material facts or a statement of additional material facts.

---

$650 per hour for her work as an expert witness, and that she would receive this payment only if Plaintiff recovers money in this action.  ([29] at 7-8).  This contingency arrangement is prohibited by Georgia's Rules of Professional Conduct.  Ga. R. Prof. Conduct 3.4(b)(3) ("A lawyer shall not . . . pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of the testimony or the outcome of the case."); see also United States v. McCarthy Improvement Co., No. 3:14-cv-919, 2017 WL 443486, at *20 (M.D. Fla. Feb. 1, 2017) ("The common law rule in most jurisdictions is that it is improper to pay . . . an expert witness a contingent fee.").  When Defendants raised this issue in their Daubert Motion, Fey effectively recanted her testimony in an affidavit attached to Plaintiff's response brief, and stated that her "compensation would be discussed and confirmed" at a later date.  ([33.1]).  Fey has since stated, in her untimely filed supplemented report, that her compensation is $200 per hour.  ([40] at 1).

On March 28, 2017, more than month after the materials were due, and more than two weeks after Defendants filed their reply brief, Plaintiff filed his Motion for Leave seeking permission to untimely file his statement of additional material facts and his response to Defendants' statement of undisputed material facts. Plaintiff states that he failed to timely file these documents because he lacks a "paralegal or law clerk" and has had an "unusually busy docket of late." ([42] at 3). Defendants oppose Plaintiff's request to untimely file his materials.

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "[E]xtension of the time period is by no means a matter of right" under this provision. Charles 4B Alan Wright et al., Fed. Prac. & Proc. Civ. § 1165 (4th ed. Apr. 2017 Update). In determining whether excusable neglect exists, courts consider "all relevant circumstances," including "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

Plaintiff has not established good cause for granting his requested extension or excusable neglect for his failure to timely file his response materials. The proffered reasons for his delay—understaffing and a "busy docket"—are insufficient. See Clinkscales v. Chevron U.S.A., Inc., 831 F.2d 1565, 1569 (11th Cir. 1987) ("[T]he fact that counsel has a busy practice does not establish 'excusable neglect.'"); see also Hawks v. J.P. Morgan Chase Bank, 591 F.3d 1043, 1048 (8th Cir. 2010) ("Hawks's assertion in his motion that his counsel was occupied with other hearings does not constitute excusable neglect."); United States v. Dumas, 94 F.3d 286, 289 (7th Cir. 1996) ("'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule."); cf. Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 101 (1st Cir. 2003) ("Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences."). The Court previously granted Plaintiff's request— submitted after the deadline—for an extension of time in which to file his response materials. Plaintiff is not entitled to a second extension sought more than a month after his materials were due and more than two weeks after briefing concluded on Defendants' Motion for Summary Judgment.[6] To allow this extension would

---

[6] Plaintiff admits that, when Defendants filed their reply brief on

unjustifiably delay proceedings and result in additional expense, including because Defendants likely would require an opportunity to file additional materials addressing Plaintiff's untimely submissions.

Plaintiff's Motion for Leave is denied, and the Court disregards his proposed response to Defendants' statement of undisputed material facts, his proposed statement of additional material facts, and any factual assertions or evidence otherwise relied on by Plaintiff. See Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) ("The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."). Because Plaintiff has not complied with local Rule 56.1, the Court, having reviewed Defendants' citations to the record, adopts the facts in Defendants' Statement of Undisputed Material Facts [53.2] for which there is evidentiary support. See Hampton v. Atzert, 590 F. App'x 942, 944 (11th Cir. 2014) ("[A] district court will accept each of the movant's facts admitted at summary judgment unless the nonmovant directly refutes these facts with concise

March 13, 2017, he realized he had failed to submit the materials required by the Local Rules. ([42] at 2). He did not seek leave to file the required materials for another fifteen days. Plaintiff's delay is unreasonable.

responses."); <u>Reese</u>, 527 F.3d at 1268 (stating that compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts); <u>cf. id.</u> at 1269 (stating that, where the non-movant fails to comply with Local Rule 56.1, the court still must "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact").

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. <u>Legal Standard</u>

"Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Ahmed v. Air France-KLM</u>, 165 F. Supp. 3d 1302, 1309 (N.D. Ga. 2016); <u>see</u> Fed. R. Civ. P. 56. "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" <u>W. Grp. Nurseries, Inc. v. Ergas</u>, 167 F.3d 1354, 1360 (11th Cir. 1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u> at 1361 (quoting <u>Anderson</u>, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999). The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." Celotex, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham, 193 F.3d at 1282. The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

"If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." Apcoa, Inc. v. Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 250).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)); cf. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict" (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted))).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott, 550 U.S. at 380.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." Graham, 193 F.3d at 1282. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." Id.

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 322-23; see Freeman v. JPMorgan Chase Bank N.A., -- Fed. App'x --, 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (same); Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.").

B.    Count 1

Count 1 asserts that "Defendants made extensive unauthorized use of Plaintiff's [Drawing] as Defendants' primary brand or icon image for the restaurant establishment in its marketing and advertising, including but not limited to use of

the work in print and online, as well as in the creation of its menus, gift cards and business cards, and each of such uses constitutes a violation of Plaintiff's rights under the Copyright Act, 17 U.S.C. § 501." (Compl. ¶ 50). Plaintiff seeks, under 17 U.S.C. § 504, actual damages, statutory damages, and any profits obtained by Defendants as a result of their alleged infringements. (Compl. ¶¶ 52-53).

"To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the work and (2) defendants copied protected elements from the work." Smith v. Casey, 741 F.3d 1236, 1241 (11th Cir. 2014). If infringement is established, plaintiff is entitled to (1) "actual damages and any additional profits of the infringer" or, if plaintiff elects, (2) statutory damages not exceeding $30,000 or, if the infringement was willful, $150,000. 17 U.S.C. § 504. Defendants do not challenge Plaintiff's assertion that their use of the Drawing infringed Plaintiff's copyright. They seek summary judgment on Count 1 on the grounds that Plaintiff "is not entitled to any statutory or actual damages—the only remedies available under 17 U.S.C. § 504." ([32.1] at 3).

a)     Statutory Damages

A plaintiff is not entitled to statutory damages for "(1) any infringement of copyright in an unpublished work commenced before the effective date of its

22

registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. "The term 'commenced' is defined as the first act of infringement in series of ongoing separate infringements." Cornerstone Home Builders, Inc. v. McAllister, 311 F. Supp. 2d 1351, 1352 (M.D. Fla. 2004); see Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 700-01 (9th Cir. 2008) ("Every court to consider the issue has held that infringement 'commences' for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.").

The undisputed evidence shows that Defendant' use of the Drawing had "commenced" by late 2013, when Plaintiff saw the Drawing on the Restaurant's website, menus, business cards, and gift cards. The Drawing was registered on November 17, 2014, approximately one year later. Plaintiff is not entitled to elect statutory damages for the copyright infringements alleged in Count 1 because the infringements commenced approximately one year before the effective date of the Drawing's registration.[7] Cf. Cornerstone Home Builders, Inc. v. McAllister, 311

_____

[7]     Plaintiff, in his summary judgment brief, does not argue otherwise. He claims instead that he is entitled to statutory damages for Defendants' use of the

23

F. Supp. 2d 1351, 1352 (M.D. Fla. 2004) ("The Eleventh Circuit holds that a

plaintiff is not entitled to attorney's fees or statutory damages under [17 U.S.C.

§ 412] when the work at issue is not registered with the copyright office at the time

the alleged infringement occurred.").

b)    Actual Damages and Profits

The Copyright Act states that "[t]he copyright owner is entitled to recover

the actual damages suffered by him or her as a result of the infringement."

17 U.S.C. § 504(b).  "Actual damages may include 'lost sales, lost opportunities to

license, or diminution in the value of the copyright,' or 'the fair market value of a

license covering the defendant's use.'"  BWP Media USA Inc. v. HipHopzilla,

Inc., No. 1:14-cv-16, 2016 WL 4059683, at *2 (N.D. Ga. May 26, 2016) (quoting

Gaylord v. United States, 678 F.3d 1339, 1343 (Fed. Cir. 2012)).

Plaintiff does not argue, or present evidence showing, that Defendants' use

of the Drawing resulted in lost sales, lost opportunities to license the Drawing, or a

reduction in the value of his copyright.  The evidence shows Plaintiff has not

incurred these losses, because he is unwilling to sell the Drawing to third parties

and believes that commissioned artworks, such as the Drawing, "usually" are of

---

Monochromatic Photograph, an allegedly "unauthorized derivative," which is the
subject of Count 2.  ([37] at 15).

value "only . . . to the person who is commissioning it."  (DSMF ¶¶ 15-17); see

Pronman v. Styles, 645 F. App'x 870, 873 (11th Cir. 2016) (finding that defendant

was entitled to summary judgment on plaintiff's copyright infringement claim

because there was no evidence of actual damages, including because plaintiff "did

not know if there was a market for" his copyrighted work).  Although Plaintiff

claims he is entitled to the market value of a license covering Defendants' use of

the Drawing, ([37] at 13-14), his only evidence of these damages is Fey's expert

testimony, which the Court has excluded as unreliable.[8]  In the absence of any

supporting evidence, Plaintiff is not entitled to actual damages.  See Interplan

Architects, Inc. v. C.L. Thomas, Inc., No. 4:08-cv-03181, 2010 WL 4366990, at

*43 (S.D. Tex. Oct. 27, 2010) (granting summary judgment to defendant on

plaintiff's claim for actual damages in a copyright infringement case, because the

court struck an affidavit from the record and plaintiff presented no other evidence

of "the license fee it might have obtained" from the defendant).

The Copyright Act states that, in addition to recovering actual damages, a

copyright owner may recover "any profits of the infringer that are attributable to

the infringement and are not taken into account in computing actual damages."

---

[8]      Even if Fey's expert report was admissible under Daubert, it is not properly
before the Court because Plaintiff failed to submit a statement of additional facts or
a response to Defendants' statement of undisputed material facts.

17 U.S.C. § 504(b). "With respect to profits, the plaintiff must show a causal relationship between the infringement and profits, and must also present proof of the infringer's gross revenue." Pronman v. Styles, 645 F. App'x 870, 873 (11th Cir. 2016). Plaintiff has not presented any evidence of Defendants' profits or attempted to show a causal relationship between the profits and the alleged infringement. It is undisputed that Defendants did not make any profits during their allegedly infringing use of the Drawing in 2013 and 2014. (DSMF ¶ 66). Plaintiff is not entitled to recover profits under 17 U.S.C. § 504(b).

Defendants are entitled to summary judgment on Count 1 because Plaintiff has not presented evidence of his actual damages, is not entitled to statutory damages or profits, and, for the reasons explained later in this Order, is not entitled to injunctive relief. See EsNtion Records, Inc. v. TritonTM, Inc., No. 3:07-cv-2027, 2009 WL 3805827, at *8 (N.D. Tex. Nov. 13, 2009) ("Because Plaintiff cannot show that any [copyright] infringement caused it to suffer damages, it has failed to carry its burden and show that there is a genuine issue of material fact with respect to its copyright claims. Accordingly, summary judgment in favor of Defendant is warranted."); Nw. Airlines, Inc. v. Am. Airlines, Inc., 870 F. Supp. 1504, 1512 (D. Minn. 1994) ("Assuming for the moment that the tables are copyrightable and that Northwest infringed that copyright, Northwest is

nevertheless entitled to summary judgment because American has not shown that it is entitled to either injunctive or monetary relief.").

C.    Count 2

Count 2 asserts that the Monochromatic Photograph is "substantially similar [to] and indistinguishable" from the Drawing and "was not the result of independent creation, but was undertaken willfully [to] mimic Plaintiff's [Drawing] in appearance and impression," in violation of the Copyright Act. (Compl. ¶¶ 59-60).  Plaintiff claims the Monochromatic Photograph replicates the Drawing's "pencil-like appearance," "angle and perspective, composition and mood." (Compl. ¶¶ 60-61).

"To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the work and (2) defendants copied protected elements from the work." Smith, 741 F.3d at 1241.  "If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1248 (11th Cir. 1999).  "To show substantial similarity, the plaintiff must establish that an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Id.  The substantial similarities must

involve copyrightable material, which, in the context of a photograph, include "the selection of lighting, shading, timing, angle, and film." Id.; Leigh v. Warner Bros., 212 F.3d 1210, 1215 (11th Cir. 2000). Copyright protection "extends only to the particular expression of an idea and never to the idea itself." Herzog, 193 F.3d at 1248.

Plaintiff has not presented "direct proof of copying," but argues that Defendants' use of the Monochromatic Photograph infringes his copyright interest because the photograph is substantially similar to the Drawing. The Court finds that no reasonable jury could agree with this conclusion.[9] There are substantial differences between the images, including the following: (1) the Drawing is a pencil sketch and the Monochromatic Photograph is a photograph, (2) the photograph was taken from a different angle than the Drawing, (3) the photograph appears to depict the Restaurant at night, while the Drawing depicts no light behind the windows, which is consistent with a daytime view, (4) the Drawing, but not the photograph, features a large dining porch on the right side of the image, (5) the Drawing, but not the photograph, prominently features a tree on the right side of the image and a street in front of the building, (6) the tree in the Drawing

_____

[9] The Drawing and the Monochromatic Photograph are attached to this Order as Exhibits A and B. That no reasonable jury could find them substantially similar is self-evident.

artistically blends into the skyline, creating a mood or impression that is not present in the photograph, (7) the tree in the Drawing obscures a significant portion of the upper floor of the Restaurant, and (8) the signs on the Restaurant in the Drawing are different than the signs in the photograph. That the Drawing and the Monochromatic both depict the exterior of the Restaurant is insufficient to establish copyright infringement. See Leigh, 212 F.3d at 1214 ("Leigh's copyright [in a photograph of a statue] does not cover the appearance of the statue itself or of Bonaventure Cemetery [where the statue was located], for Leigh has no rights in the statue or its setting."); Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982) ("[W]e caution trial courts not to be swayed in an infringement action by the fact that two works embody similar or even identical ideas.").

Because no reasonable jury would find that the Drawing and the Monochromatic Photograph are substantially similar, Defendants are entitled to summary judgment on Count 2. See Herzog, 193 F.3d at 1257 ("A court may grant summary judgment for defendant as a matter of law if the similarity between

the two works concerns only noncopyrightable elements of the plaintiff's work *or* if no reasonable jury would find that the two works are substantially similar.").[10]

D.     Count 3

Count 3 alleges that that, in violation of 17 U.S.C. § 1202, Defendants intentionally "removed, covered or replaced the inscription 'Tony Fey'" on the Drawing. (Compl. ¶ 68). The Digital Millenium Copyright Act provides that "[n]o person shall, without the authority of the copyright owner or the

_____

[10]     Plaintiff also claims that Defendants' Monochromatic Photograph is an unauthorized "derivative" of the Drawing, which violates Plaintiff's "exclusive right[]" to "prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2); (Compl. at 14). "[A] derivative work must incorporate a substantial element of a preexisting work of authorship and recast, transform, or adapt those elements." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010). Plaintiff's "derivative" claim fails because he has does not present any cognizable supporting evidence, the Monochromatic Photograph is substantially different than the Drawing, and it is undisputed that Plaintiff derived the Monochromatic Photograph from the Color Photograph that Defendants acquired when they purchased the Restaurant. (DSMF ¶ 59; see [30] at 32 (Plaintiff's expert testifying that the Color Photograph appears to be "an original work of art")).
Plaintiff's response brief relies on an expert report prepared by Gregg Bauer. ([37] at 18). The Court disregards this report because it was not included in Defendants' summary judgment materials or in a properly filed response to Defendants' statement of undisputed material facts. Reese, 527 F.3d at 1268 ("The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."). Even if the report was properly before the Court, it would not change the Court's conclusion that no reasonable jury could find that the Monochromatic Photographs is a derivative of the Drawing or that it infringes Plaintiff's copyright in the Drawing.

law . . . intentionally remove or alter any copyright management information," including the name of the author of the copyrighted work. 17 U.S.C. §§ 1202(b)(1), (c)(2).

The undisputed evidence is that Plaintiff's name was not visible or legible on the version of the Drawing that Schulman discovered in the newspaper advertisement and used in the Restaurant. (DSMF ¶ 46; [27] at 51-52, 61). There was no visible or legible name that Defendants could have "remove[d] or alter[ed]." 17 U.S.C. § 1202(b)(1). Even if there was, Schulman did not see Plaintiff's name on the Drawing, and did not even know who created the image until Plaintiff told him months after the Restaurant started using it. ([28] at 72; [28.1] at 112-113; [27] at 77). Because Defendants did not know that Plaintiff's name was on the Drawing, their removal of the name, even if removal had occurred, it was not unintentional. Defendants are entitled to summary judgment on Count 3.

E.    Count 4

Count 4 seeks attorney's fees, under 17 U.S.C. § 505, on the grounds that "Defendants' conduct in this dispute has been objectively unreasonable and unduly litigious." (Compl. ¶ 76). The Copyright Act permits the Court, "in its discretion," to award attorney's fees to the "prevailing party." 17 U.S.C. § 505. For the

reasons explained in this Order, Plaintiff is not the prevailing party in this action and thus is not entitled to attorney's fees under section 505.[11]  Defendants are entitled to summary judgment on Count 4.[12]

F.      Count 5

Count 5 asserts a state law claim for unjust enrichment on the grounds that "equity and good conscience demand that Plaintiff be compensated for the benefits received by Defendants with regard to Plaintiff's work."  (Compl. ¶ 81).  Because Defendants are entitled to summary judgment on Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the state law claim asserted in Count 5.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) (stating that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been

_____

[11]     17 U.S.C. § 412 also bars Plaintiff from recovering attorney's fees for Defendants' alleged infringement involving the Drawing.  See 17 U.S.C. § 412 (barring recovery of attorney's fees, subject to inapplicable exceptions, for infringements "commenced before the effective date of [the copyright] registration").
[12]     The Court, in its discretion, declines to require Plaintiff to pay for Defendants' attorney's fees in defending this action.

32

dismissed prior to trial.").  Count 5 is dismissed without prejudice.  <u>See</u>

<u>Dudley v. City of Bessemer, Ala.</u>, No. 2:12-cv-01762, 2014 WL 4829532, at *8

(N.D. Ala. Sept. 29, 2014) ("Because the Court grants summary judgment on

Ms. Dudley's federal claims, the Court declines to exercise supplemental

jurisdiction over her state law assault claim against Mayor Gulley and will dismiss

it without prejudice.").

      G.    <u>Count 6</u>

Count 6 seeks a permanent injunction, under 17 U.S.C. § 502 and O.C.G.A.

§ 10-1-370 *et seq.*, enjoining Defendants "from making future infringing uses of

the Plaintiff's protected work."  (Compl. at 23; Compl. ¶¶ 83-86).  The Copyright

Act permits a court to "grant temporary and final injunctions on such terms as it

may deem reasonable to prevent or restrain infringement of a copyright."

17 U.S.C. § 502.  "Because injunctions regulate future conduct, a party has

standing to seek injunctive relief only if the party shows a real and immediate—as

opposed to a merely conjectural or hypothetical—threat of *future* injury."

<u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1329 (11th Cir. 2013).

The evidence shows that Defendants stopped using the Drawing in late 2014

and replaced it with the Monochromatic Photograph, which, for the reasons stated

earlier in this Order, does not infringe Plaintiff's copyright.  (DSMF ¶ 61).

Defendants informed Plaintiff, in April 2016, that they had ceased "reproducing, distributing or displaying the [Drawing] in any medium that it controls" and that they had "no interest" in using the Drawing in the future.  ([32.13] at 2).  Plaintiff has not presented evidence showing a real and immediate threat of future infringements involving the Drawing.  Plaintiff is not entitled to a permanent injunction, and summary judgment is awarded to Defendants on Count 6.[13, 14]

Defendants' Motion for Summary Judgment is granted.

---

[13]     To the extent Plaintiff seeks a permanent injunction under state law, the Court declines to exercise supplemental jurisdiction over this claim.

[14]     Plaintiff asserts, in the body of his response brief, that the Drawing "can still be found in use promoting the restaurant at www.cobbenergycentre.com and www.zoestreamenterprises.com."  ([37] at 20).  The Court disregards these factual assertions because they were not included in a properly filed response to Defendants' statement of undisputed material facts.  See Reese, 527 F.3d at 1268.  Even if these facts were properly before the Court, the websites identified by Plaintiff are third party websites over which there is no evidence that Defendants exercise control.  Plaintiff also states, in his proposed Statement of Additional Material Facts [42.2], that, until late 2016, the Restaurant's online version of its children's menu featured the Drawing.  Even if this evidence was properly before the Court, it does not establish "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury" because this appears to have been an isolated occurrence, there is no evidence of any injury to Plaintiff based on the Drawing's inclusion on the children's menu, and the Drawing was removed from the menu in late 2016.  Houston, 733 F.3d at 1329; [28.1] at 109 (Schulman testifying that "[a]s soon as I learned [that the Drawing was still on the online children's menu], I changed it.  My in-house menus didn't have that old image.  I made a mistake.").

## V.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to file Plaintiff's Local Rule 56.1(B)(2) Response to Statement of Undisputed Material Facts and Plaintiff's Local Rule 56.1(B)(2)(b) Statement of Additional Material Facts [42] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Daubert Motion to Exclude Proposed Expert Testimony of Anna Fey [31] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [32] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.


**SO ORDERED** this 18th day of May, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

Exhibit A



